**Richard BOUDREAUX,**
**Plaintiff-Appellant,**

v.

**Pat PUCKETT, d/b/a Pat Puckett Auto**
**Sales et al., Defendants,**

**Western Surety Co., Defendant-Appellee.**

**No. 77–2913.**

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1980.

Paula A. Perrone, New Orleans, La., for plaintiff-appellant.

Eugene R. Preaus, Eileen Shaver, New Orleans, La., for Western Surety Co.

Before THORNBERRY, GEE, and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

Richard Boudreaux appeals from the district court's dismissal of his civil action against Western Surety Company. Boudreaux alleges that he purchased an automobile on which the odometer was replaced with one that showed much less than the true mileage. Boudreaux brought suit for damages and penalties against the individual who sold him the car as well as against Western Surety. Defendant Western Surety was the surety on a bond in the amount of $5,000 which Boudreaux's vendor posted pursuant to the provisions of Louisiana Revised Statute 32:718(D). Boudreaux appeals from Judge Schwartz's decision to dismiss Western Surety from the suit by granting the surety's motion for summary judgment. We affirm the judgment insofar as it ruled that Boudreaux failed to state a claim under federal law. We hold further that the complaint states a claim under Louisiana law within the pendent jurisdiction of the district court. Therefore, the dismissal of the complaint as to Western Surety is reversed and the cause is remanded.

On July 26, 1976, Boudreaux purchased a 1974 Dodge Coronet from Philip Roman, d/b/a All State Motor Company and Pat Puckett, d/b/a Pat Puckett Auto Sales. Roman was in the business of selling used

automobiles and was bonded by Western Surety in the amount of $5,000: The bonding requirement was a prerequisite for Roman to do business in Louisiana as a used car dealer. At the time of the sale, Roman disclosed on all pertinent documents that the odometer reading was 25,671 miles. The alleged actual odometer reading, unknown to Boudreaux, was 73,887 miles. Soon after the sale, the engine quit running and the car was considered virtually useless.

Appellant alleged that the odometer reading was willfully understated as an inducement for him to purchase the automobile. He also alleged that Roman and Puckett conspired to violate the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981. By an amendment to his complaint, appellant alleged that Western Surety was liable to him to the extent of the $5,000 bond which it had posted in behalf of Roman, as required by La.R.S. 32:718(D). This statute provides that, as a condition precedent to dealing in automobiles, the bond must be posted in favor of the state Motor Vehicle Commissioner for the use and benefit of third parties injured under certain conditions specified in the statute. Section 718(D) provides in pertinent part as follows:

> Such bond shall be payable to the commissioner and to his successors in office, for the use, benefit, and indemnity of any persons who shall suffer any loss as a result of any violation of the conditions hereinabove contained.

The conditions referred to in this statute are that the dealer shall:

> . . . comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate

any of the provisions of this Chapter [32:701 to 32:734] or any other law of Louisiana in the conduct of the business for which he is licensed.

Western's bond is alleged to have been in effect at all times relevant to this action.

The initial question is whether the claim against Western Surety should be dismissed for lack of jurisdiction. Any finding that this court possesses jurisdiction to hear this claim must be based on the recently emerging doctrine of pendent party jurisdiction. This is the case because while the suit against Roman is based on a violation of the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. 1981, Boudreaux's claim against Western Surety is based on a Louisiana statutory bond provision. There is no independent basis for exercising jurisdiction over Western Surety. Therefore, we must determine whether Western Surety is a pendent party.[1]

The doctrine of pendent party jurisdiction entails bringing extra parties into a federal suit who could not otherwise be subjected to federal jurisdiction. The major Supreme Court pronouncement on pendent party jurisdiction is found in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). In *Aldinger*, the plaintiffs sought to couple their civil rights claim under 42 U.S.C. § 1983 against county officials with a state law claim against the county itself. Jurisdiction over the federal claim was based on 28 U.S.C. § 1343(3) and pendent jurisdiction was alleged to lie over the state law claims because there was no independent basis of jurisdiction over the county. The Supreme Court first distinguished *Aldinger* from its previous decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)

---

1. Defendant-appellee Western Surety has brought to our attention our unpublished opinion in *Stevenson v. Western Surety Co.*, No. 77–2854 (June 2, 1978), as support for the claim that this court does not have jurisdiction over Western Surety. But *Stevenson* is clearly distinguishable from the facts of this case. In that case, Stevenson first brought suit against an automobile seller alleging a violation of the Motor Vehicle Information and Cost Savings Act of 1972. At a later time, Stevenson initiat-

ed an action against Western Surety based on a state claim. There was no attempt to join the two actions. Therefore, it is clear in *Stevenson* that there was no basis for asserting jurisdiction over Western Surety even under the broad parameters of pendent party jurisdiction. Unlike in *Stevenson*, in this case, the automobile dealer and the surety were joined in the same suit. Therefore, pendent party jurisdiction can potentially be asserted.

(recognizing pendent claim jurisdiction), stating that pendent claim jurisdiction is both factually and legally different from pendent party jurisdiction. Without making any "sweeping pronouncement" concerning the existence or non-existence of pendent party jurisdiction, the Supreme Court refused to assert jurisdiction over the county because of the fact situation presented in *Aldinger*. Justice Rehnquist emphasized that, while a civil rights action set out in § 1983 is included within the jurisdictional grant of 28 U.S.C. § 1343(3), Congress *expressly* excluded counties from § 1983 liability. Therefore, the county could not be brought back within the power of the federal court as a pendent party.

■ The Supreme Court in *Aldinger* did not completely overrule the possibility of recognizing pendent party jurisdiction in certain fact situations. The Court noted that a particularly compelling situation would arise, for example, in the prosecution of tort claims against the United States under 28 U.S.C. § 1346 because only in a federal court could all of the claims be tried together. Other factors to consider were judicial economy and convenience. Justice Rehnquist concluded with the following observations:

> If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

427 U.S. at 18, 96 S.Ct. at 2422. We must consider these factors.

We must also examine this court's decision in *Connecticut General Life Insurance Company v. Craton*, 405 F.2d 41 (5th Cir. 1968). In *Craton*, this court apparently recognized the doctrine of pendent party jurisdiction. The case involved a suit by a union and its individual members against an employer and an insurance carrier (Connecticut General). The court obviously possessed jurisdiction over the employer based upon § 301 of the Labor Management Relations Act. Without deciding whether a suit against an insurance company that is not an employer is essentially a suit for the violation of a contract between an employer and a labor organization as required by § 301, citing *Gibbs*, this court stated that the federal district court's assertion of jurisdiction over Connecticut General was "supportable under the doctrine of pendent jurisdiction." 405 F.2d at 48. Judge Goldberg's opinion relied on the "common nucleus of operative fact" and considered other factors such as judicial time and energy as well as the "strong and practical policies undergirding the pendent jurisdiction doctrine."

The facts presented in the present case do not pose the strongest possible case for jurisdiction. While the facts do not present as compelling a situation as is the case when the federal claim can *only* be brought in a federal court, it is not a case, as in *Aldinger*, where Congress has expressly or impliedly negated the existence of jurisdiction of a pendent claim and party. Considerations of judicial economy and convenience strongly support litigating the claim against Western Surety along with the federal claims against Roman and Puckett. Consistent with the factors mentioned in *Aldinger*, Article III of the United States Constitution permits assertion of jurisdiction over Western Surety. Also, the statutes Congress has enacted conferring jurisdiction have not expressly or by implication negated an assertion of jurisdiction over Western Surety.

An examination of the merits of the case reveals that the district court erred in granting Western Surety's motion for summary judgment. In doing so, the district court held first that appellant failed to demonstrate that there was a "written contract" between himself and Roman, Western's principal. Such a contract is required as a condition before the provisions of section 32:718(D) become applicable. The court held further that "the Louisiana stat-

ute which requires the furnishing of an odometer disclosure statement does not create a civil right of action for damages." *Boudreaux v. Puckett*, 433 F.Supp. 650, 653 (E.D.La.1977). In addition, the district court held that the statutory surety bond does not specifically or impliedly come into effect when there is a violation of federal law.

■ The first condition of § 32:718(D) that must be satisfied before a payment will be made from the bond examines whether there is a *"written contract* made by such dealer in connection with the sale or exchange of any motor vehicle"* (emphasis added). We conclude that the district court erred in holding that the bill of sale given by Roman to appellant was not a "written contract" within the scope of La. R.S. 32:718(D). We base this finding on the holding of the Louisiana Court of Appeals in *Richardson v. French*, 253 So.2d 602 (La. App.1971). The court in *Richardson* held that an "invoice and bill of sale" constituted a written contract which could not be varied by parol. This was the case even though the invoice and bill of sale showed no more than the names of the buyer and seller, the price paid, a description of the automobile, and the signature of only the seller. This is exactly what is shown by the bill of sale in the instant case. In addition, the bill of sale in this case states the purported mileage of the vehicle. Therefore, it constitutes a "written contract" that Roman must comply with.

■ The second condition of § 32:718(D) examines whether there has been a violation of any of the provisions of Title 32, Chapter 4 (32:701 to 32:734) *or* any other law of Louisiana in the conduct of the dealer's business. Included in Chapter 4 is § 32:726.1 which provides as follows:

Except where a transfer is made by operation of law the transferor of any motor vehicle which was equipped with an odometer by the manufacturer, shall provide to the buyer a statement signed by the transferor which shall set forth the mileage on the odometer at the time of transfer and which shall state that to the

transferor's best knowledge and belief it is the true mileage. If the transferor has knowledge that the mileage shown on the odometer is not the true mileage traveled by the motor vehicle, he shall so indicate on the statement and he shall state the true mileage to his best knowledge and belief. The mileage disclosed on such statement shall be included in the application for certificate of title and the new certificate issued in the name of the buyer shall have the mileage recorded on the face thereof.

La.R.S. 32:726.1(F). The district court, while admitting the existence of this provision, held that because La.R.S. 32:726.1(H) provides for a criminal penalty for violation of § 32:726.1(F), no civil remedy can exist under Louisiana law for inducing the purchase of a motor vehicle by a willful and knowing understatement of its true mileage. We find no support for this position and hold that the district court erred in its finding. Section 32:718(D) specifically provides that the bond exists to indemnify *anyone* who suffers a loss as a result of the violation of *any* provision of Title 32, Chapter 4. Therefore, we find that the condition stated in § 32:718(D) has been satisfied.

■ But even if there was not a violation of Title 32, Chapter 4, it is enough to merely find a violation of "any other law of Louisiana." We believe that the complaint sufficiently alleged that Roman violated the Louisiana Unfair Trade Practice and Consumer Protection Law, La.R.S. 51:1401–1418. Section 1405(A) of this Act refers to a plaintiff who can prove that he was injured as a result of an unfair or deceptive act or practice in commerce. The facts specified in the complaint sufficiently allege the presence of an unfair or deceptive act in violation of a Louisiana law.

Because Boudreaux's allegations of facts have satisfied the conditions of § 32:718(D), we must find that the district court erred in granting summary judgment to Western Surety. Rule 54(b), F.R.Civ.P., permits a court to direct the entry of a final judgment as to one of the parties in a suit involving multiple parties only upon an ex-

press determination that there is no just reason for delay and upon an express direction for the entry of a judgment. In light of the above discussion, it is clear that the district court judge incorrectly made such a determination.

■ Finally, we agree with the district court that appellant has no *federal* right of action against Western by authority of these Louisiana statutes. The bond statute provides that bond shall be posted for indemnity of any person who suffers a loss as a result of violations of certain Louisiana statutes "or any other law of Louisiana in the conduct of the business." The statute makes no mention of indemnity for violations of any federal statutes. Accordingly, the district court's ruling that appellant has no federal right of action against Western for Roman's alleged violations of the federal statutes is AFFIRMED.

The district court's ruling that the bill of sale in this case did not constitute a written contract is REVERSED. Its holding that appellant has no civil right of action against Western under Louisiana law also is REVERSED. This case is REMANDED for exercise of pendent jurisdiction over appellant's state-law claim against Western Surety Company.

AFFIRMED in part; REVERSED in part; and REMANDED.